**Wheeler Endre BOLDEN, Plaintiff,**

v.

**ABF FABRICATORS, INC., Defendant.**

**Civ. A. No. 92–C–1714–S.**

United States District Court,
N.D. Alabama,
Southern Division.

Aug. 3, 1994.

Richard J. Stockham, III, Stockham & Stockham P.C., Birmingham, AL, for plaintiff.

William B. Hairston, Jr. and Judith D. Holt, Engel Hairston & Johanson, Birmingham, AL, for defendant.

## MEMORANDUM OF OPINION

CLEMON, District Judge.

In this action, plaintiff Wheeler Andre Bolden, a black man, claims that during his employment with defendant ABF Fabricators, Inc., he was subjected to a racially hostile work environment. He also claims that he was discharged because of his race. The Court finds that he has carried his burden of proof on both claims.

### I.

ABF Fabricators, Inc. ("the Company") is a steel fabrication firm in Birmingham, Alabama. Between twenty and twenty-five persons comprise its work force. Machine and brake operators account for roughly a quarter of the work force. From two to four of employees are assigned to the paint department, a substantial part of whose work is to paint the metal boxes which hold electrical units.

Plaintiff Bolden applied for employment with the Company in August, 1991. In his written application, he disclosed that he has special skills as a machine operator, and that on his most recent job, he worked, inter alia, as a machine operator. The Company hired plaintiff on September 24, 1991, as a helper in the paint department at the rate of $5.00 per hour. Three days after plaintiff was hired, the Company hired a third black, Charles Gwynn as a helper and at a rate of $4.75 per hour. Plaintiff and Gwynn were the lowest paid employees of the Company.

Although he had little, if any, paint experience at the time of his assignment to the paint department, plaintiff was, according to his supervisor Larry Robertson, a "quick study" who learned the job fast. Robertson was thoroughly satisfied with plaintiff's progress and with his work. By December 1, 1991, plaintiff had become proficient in his job. However unbeknown to plaintiff, he had also placed himself in Garner's disfavor by complaining to Garner of his dissatisfaction with the racist statements and jokes which permeated the workplace.

In late December, the Company learned that one of its primary customers would no longer be placing orders. Realizing that it would need to downsize its work force, Garner utilized this opportunity to rid the Company of the second disgruntled black employee.[1] Under the guise of a need for a more experienced painter, the Company hired a new white employee, Dean Brown, on December 31, 1991. Brown has substantially more painting experience than plaintiff.

On January 21, 1992, three weeks after Brown was hired, five white employees were laid off in the reduction in force necessitated by the contract cancellation.[2] That same day, the Company, acting through Garner, terminated plaintiff. Garner told plaintiff that he was being laid off for lack of work.

Following his termination, plaintiff called Garner on a daily basis to see if work was available. Garner consistently told him that nothing was available. Plaintiff was never recalled to work by the Company. On the other hand, the uncontradicted evidence is that the laid-off white workers were recalled.

Despite telling plaintiff that there was no work available, the Company continued to hire new workers. On June 28, 1992, the Company hired a new white employee, Roy Earl Lewis, Jr. In August 1992, two new whites were hired. In September, four new whites and two new blacks were hired.

Plaintiff diligently sought interim employment. On April 13, 1993, he secured employment that pays more than his job at the Company.

### II.

Racism pervades the working environment at the Company. The white workers and supervisors constantly make racist remarks and jokes. Black persons are referred to as

1. In early November 1991 Charles Gwynn, who had earlier complained to Garner (and also to Robertson) about the daily racial indignities which the black workers suffered, walked off the job, never to return. Gwynn testified that he left the job immediately after Robertson said to him, "Damn boy, nigger, you're stealing time off my damn clock."

2. Three other white workers quit. By that time the third black employee, Charles Gwynn, had also quit.

"jungle bunnies," "boys," "niggers," "spades," "you people," and "coons." Work performed by blacks is referred to as "nigger-rigging," and statements are made in the presence of the black workers to the effect that blacks "have strong backs and weak minds," "can't think for themselves," and "[blacks] can't paint."

The vice-president and superintendent of the Company, William P. Garner, Jr., frequently uses the term "nigger-rigging" (he did not deny it at trial); and by his own admission at trial, he uses the term "nigger" in the workplace.[3]

Three of the four blacks who testified at trial were visibly offended by the racial atmosphere at the Company. The Company's first black employee, Joey Paul Felton, is apparently impervious to the pervasive racism its the work place. Mr. Felton, unlike the other black employees, neither sees, hears, nor feels any of the pervasive racism. Not without significance, he is the only one of the five blacks ever hired by the Company not classified as a "helper" and whose wage rate is not at the very bottom tier of the Company.

As found earlier, plaintiff and Gwynn were the lowest paid employees at the Company.

After plaintiff's discharge, the Company continued its discriminatory treatment of blacks. Both of the two blacks hired in September 1992, came in as helpers and at starting rates substantially lower than any of the new white employees.[4] According to Garner, Eugene Honeycutt, one of the two new blacks, has many years of experience as a body shop painter. Notwithstanding his experience, Honeycutt was hired as a helper

in the paint department and paid $2.50 per hour less than the two new white "assistant painters"—neither of whom, in Garner's judgment, "is a qualified painter."

### III.

■ Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") after his termination. The EEOC's District Director, Warren A. Bullock, issued a Determination Letter, concluding that there is no reasonable cause to believe that plaintiff's charge is true. The Court accords no weight to the EEOC's determination.[5]

### IV.

Having nearly suffocated under the racially hostile atmosphere of the Company, plaintiff quite understandably does not desire reinstatement.

■ However, he is entitled to backpay at the rate which he would have been paid in the absence of discrimination, from the time of his unlawful termination at the hands of the Company to the date on which he landed his new job, plus prejudgment interest (7%). Since the Company is paying two white painters whom it deems to be unqualified at the rate of $8.50 per hour, plaintiff is entitled to at least an equal amount. The evidence indicates that plaintiff worked a forty-hour week at the Company. Thus, plaintiff is entitled to backpay in the amount of $21,954.56.

By separate order, judgment shall issue in favor of plaintiff and against defendant.

**3.** The Court does not credit Garner's disclaimer that he does not use the "n" word when he is in the presence of the black workers.

**4.** Roy Lewis's starting hourly rate was $8.00. One of the new whites hired in August started at $8.00 hourly and the other at $8.50. Three of the four whites hired in September came in at $7.00 and the fourth at $8.50 per hour. On the other hand, one of the blacks came in at $6.00 per hour and the other (Eugene Honeycutt) started at $5.50 per hour.

**5.** The EEOC's "investigation" did not focus at all on the racially hostile work place. It found, for

example, that plaintiff "... was laid off with eight other employees who possessed more experience and seniority...." In fact, only five employees were laid off; and one of the four whites, James Sexton, was hired a month after plaintiff. Cf. Plaintiff Exhibit ("PX") 2 and PX 5, Answer 13. The EEOC never considered the concept of pretext in its investigation. It never considered that the laid-off white employees were recalled. It never considered the racially disparate pay rates and job classifications. Because of the obvious failings of the EEOC's report, it is entitled to no weight.

## FINAL JUDGMENT

Based on the accompanying Memorandum Opinion, FINAL JUDGMENT is hereby ENTERED in favor of plaintiff WHEELER ANDRE BOLDEN and against defendant ABF FABRICATORS, INC.

1. Plaintiff shall have and recover of defendant the sum of Twenty-one Thousand Nine Hundred Fifty-four and 56/100 Dollars ($21,954.56), as backpay and interest for defendant's flagrant violation of 42.U.S.C § 2000(e) *et seq.* ("Title VII").

2. Plaintiff's counsel shall recover of defendant a reasonable attorney's fee, to be fixed by the Court in the absence of agreement of the parties. Within ten (10) days of the date of this judgment, plaintiff's counsel shall serve on defendant's counsel and file with the Court his demand for attorney's fees, describing the items of services rendered, the time expended, his hourly rate, and the expenses incurred in the prosecution of this lawsuit.

3. The costs of this action are hereby taxed against defendant.